IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CLEVELAND D. RUSSELL, | ) |
| | ) |
| Petitioner, | )  NO. 3:07-00921 |
| | )  JUDGE HAYNES |
| v. | ) |
| | ) |
| STATE OF TENNESSEE, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM**

Petitioner, Cleveland D. Russell, filed this action under 28 U.S.C. § 2254 seeking the writ of habeas corpus to set aside his convictions for first degree murder, especially aggravated robbery and especially aggravated kidnapping. Petitioner filed this action originally in the Eastern District of Tennessee that transferred the action to this Court. After review, the Court appointed the Federal Public Defender to represent Petitioner and granted leave to file an amended petition, if necessary.

Respondent earlier filed a motion to dismiss (Docket Entry No. 18) contending that this action was time barred, but the Court denied the motion without prejudice and concluded that an evidentiary hearing was necessary on the tolling of the Respondent's federal limitations defense. At that hearing, an issue arose as to whether under <u>Vroman v. Bringano</u>, 346 F.3d 598 (6th Cir. 2003), this action should be dismissed without a hearing. The Court continued the hearing and allowed counsel for the parties to brief that issue. Prior to the hearing, the parties filed documentary evidence.[1]

---

[1] Given Plaintiff's affidavit and the extensive documentary evidence reflecting Plaintiff's mental status, and activities during the relevant time period, the Court concludes an evidentiary hearing is unnecessary.

## A. Procedural History

On July 21, 2001, Petitioner entered his guilty plea to first degree felony murder, especially aggravated robbery and especially aggravated kidnapping and was sentenced to life without parole. Petitioner asserts that the state trial court told him that there was no direct appeal from his sentence. On September 19, 2005, Petitioner filed his state post-conviction petition that the state trial court dismissed as untimely. On appeal, the Tennessee Court of Criminal Appeals affirmed on July 14, 2006. (Docket Entry No. 20-6). On October 30, 2006, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. (Docket Entry No. 20-8). On August 17, 2007, Petitioner filed this action.

## B. Review of the State Record

In his state post-conviction proceeding, Petitioner cited his use of psychotropic drugs and lack of awareness of his right to file post-conviction relief to justify the delay in his filing of his state post-conviction petition. The state trial court found as follows:

> Specifically, Petitioner states that during his plea and thereafter he "was under the influence of psychotropic drugs and not aware of any rights." (Petitioner's pro se "Petition for Post-Conviction Relief," filed Oct. 4, 2005, at 2 ¶ 9). For the facts to support his claim, Petitioner states:
>
>> The public defender neglected to request a mental exam which would have proven I was under the influence of psychotropic drugs when place [sic] under arrest and my confession was therefore obtain [sic] without me knowing what was going on. Then my attorney told me that I must plead guilty or I would receive the death penalty - I was still under the influence of the drugs. My attorney had no interest in trying the case and allowing me my right to trial.
>>
>> During the sentencing the court was aware that I was under the influence of drugs but chose to ignore this plain fact.

2

> The illegal evidence is that the weapon they claim to have found in
> my girlfriend's house was actually obtained somewhere else on
> another person whom the police have refused to name.
>
> All this can be proven if I am grated [sic] a hearing into this
> just cause.

Id. at 3. These statements, however, do not establish that Petitioner has been suffering from a mental illness since his conviction became final in 2001 to less than a year before his filing of the instant petition, which would demonstrate Petitioner was unable to comply with the statute of limitations.

The Tennessee Supreme Court has held that "mere assertion of a psychological problem" is not sufficient to toll the statute of limitation; rather, the Court held that "due process requires tolling of the post-conviction statute of limitations only if a petitioner shows that he is unable either to manage his personal affairs or to understand his legal rights and liabilities." [State v.] Nix, 40 S.W.3d [459, 463 (Tenn. 2001)]. "[T]o make a prima facie showing of incompetence requiring tolling of the limitations period, a post-conviction petition must include specific factual allegations that demonstrate the petitioner's inability to manage his personal affairs or understand his legal rights and liabilities. Unsupported, conclusory, or general allegations of mental illness will not be sufficient to require tolling and prevent summary dismissal under Tenn. Code Ann. § 40-30-206(b) & (f)." Id. at 464. The "[f]ailure to include sufficient factual allegations of either compliance with the statute or incompetence requiring tolling will result in dismissal." Id.

Accordingly, since the petition is not timely filed and Petitioner has not met his burden in presenting a prima facie to demonstrate that the statute of limitations should be tolled, the Court is compelled to DENY Petitioner's request for post-conviction relief.

(Docket Entry No. 20-2, Order at pp. 27-28).

On appeal, the Tennessee Court of Criminal Appeals affirmed and explained that under Tennessee Supreme Court precedent:

> [T]o make a prima facie showing of incompetence requiring tolling
> of the limitations period, a post-conviction petition must include
> specific factual allegations that demonstrate the petitioner's
> inability to manage his personal affairs or understand his legal

3

> rights and liabilities. Unsupported, conclusory, or general
> allegations of mental illness will not be sufficient to require tolling
> and prevent summary dismissal under [Tennessee Code Annotated
> section] 40-30-206(b) and (f). . . . The required prima facie
> showing may be satisfied by attaching to the petition affidavits,
> depositions, medical reports, or other credible evidence that
> contain specific factual allegations showing the petitioner's
> incompetence. . . . While affidavits and depositions of mental
> health professionals may be utilized, they are not essential, and a
> petitioner may rely upon affidavits and depositions from family
> members, prison officials, attorneys, or any other person who has
> knowledge of facts that demonstrate either the petitioner's inability
> to manage his personal affairs of the petitioner's inability to
> understand his legal rights and liabilities.

Nix, 40 S.W.3d at 464.

In support of his claim that his mental health hindered his ability to file an earlier petition, Petitioner offers no factual allegations by affidavits, medical reports, or otherwise. Indeed, he states only that he was taking psychotropic drugs administered by the prison clinic and because of the drugs, he was unaware of his right to file a petition for post-conviction relief. This evidence is insufficient for a prima facie showing that Petitioner was suffering from a mental illness and was unable to manage his personal affairs or understand his legal rights since his conviction became final in 2001.

Accordingly, because Petitioner did not timely file his petition for post-conviction relief and has not satisfied his burden of presenting prima facie evidence that the statute of limitations should be tolled, he is not entitled to post-conviction relief. The trial court properly denied his petition without a hearing and without appointing counsel.

(Docket Entry No. 20-6, Memorandum Opinion at p. 4).

### C. Review of the Federal Habeas Record

According to his affidavit filed in this action, Petitioner again insists that he was unaware of his legal rights to challenge his conviction in the state courts.

> 2. When I was convicted of this offense in July 2001, I did not know of any legal actions I could take to challenge this conviction.

4

3. A short time after my conviction, I was incarcerated at South Central Correctional Complex ("SCCC"), where I remained until I was transferred to Brushy Mountain Correctional Complex in September 2004 (approximately).

4. <u>At no time before or during my stay at South Central, was I told whether the prison had any legal materials or facility for inmates to use in pursuing legal claims. Since I did not know I had any further legal options, I did not ask about any such materials or facilities.</u>

5. At South Central, I was in solitary confinement for all but a few months of my time there, and during the remaining months. I was housed in the mental health pod of the prison's "Enterprise" unit.

6. When I was transferred to Brushy Mountain in approximately September 2004, I was put in the maximum security unit of the prison, where I still am.

7. I never knew I had any right to file any further legal action until approximately the end of 2004 or early 2005, when I met an inmate advisor at Brushy Mountain who told me about my right to file a post-conviction action. The inmate advisor So, after the advisor prepared my post-conviction petition, he told me what it said, agreed to prepare post-conviction pleadings for me. Later, he prepared my federal habeas petition. I relied on the advisor to prepare my pleadings properly. I do not read well. I signed it and the petition was filed.

8. Pursuant to 28 U.S.C. § 1746, I, Cleveland Russell, declare under penalty of perjury that the foregoing is true and correct.

(Docket Entry No. 32, Russell Declaration at pp. 1-2) (emphasis added).

The remainder of the documentary record reflects that on September 24, 2001, Petitioner received an inmate handbook at SCCC that included a quotation of the federal habeas statute of limitations and the discussion of its meaning. (Docket Entry No. 51-4, at p. 32). In addition, this handbook advised Petitioner of the availability of counsel to consult on legal matters. <u>Id.</u> at p. 31. Petitioner asked questions about the handbook. (Docket Entry No. 51-3). At SCCC, Petitioner also requested a mental health counselor. (Docket Entry No. 51-10 at p. 46).

Petitioner obtained a General Equivalence Diploma in 1987. (Docket Entry No. 51-6 at

5

p. 2). Petitioner reads at a high school level. (Docket Entry No. 51-10 at p. 71). Petitioner is also writing a book. Id. at p. 51. Petitioner is capable of reading at the high school level. Id. at p. 18. A September 23, 1999 mental health assessment reflects that Petitioner has "average intelligence" and Petitioner "was not confused and was fully oriented." Id. at p. 27. Petitioner denied any paranoid ideation. Id. at 42. A psychologist considered Petitioner to be "manipulative and malingering." Id. at p. 27. A September 21, 2001 psychological assessment showed Petitioner "manifested normal thought content," id. at p. 69, and was oriented to person, place, time and circumstances." Id. at p. 70. On September 11, 2002, and other occasions, Dr. Malley O'Toole concluded that Petitioner evinced "no clinical evidence of psychoses." Id. at p. 40. See also id. at p. 43, 49, 50, 83. Petitioner's actual diagnosis is depression and polysubstance abuse with a second diagnosis of anti-social personality traits. Id. at p. 4. Petitioner takes Doxipen for his depression. Id. at p. 86.

At his guilty plea hearing, Petitioner explained that his medications, including Doxipen did not affect his ability to understand court proceedings. (Docket Entry No. 28-2 at p. 20). Throughout the guilty plea colloquy, Petitioner responded appropriately to all questions from the Court. (Docket Entry No. 28-2). On one occasion, Petitioner even disagreed with the Judge on the offense to which he was pleading guilty. Id. at p. 13. The state trial court advised Petitioner that in his guilty plea agreement, he waived his right to appeal his conviction. Id. at pp. 18-19.

### D. Conclusions of Law

The Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. Section 2244(d)(1), provides that a person convicted in state court has one (1) year from the time his conviction becomes final on direct appeal to file a federal petition. In Lindh v. Murphy, 521 U.S.

6

32 (1997) the Supreme Court held that the AEDPA was to be applied prospectively, i.e., beginning after April 24, 1996. Where a federal habeas action is stayed pending exhaustion of state court remedies, the federal limitations period is tolled. Palmer v. Carlton, 276 F.3d 777, 781 (6th Cir. 2002). Aside from the "stay and abeyance" rule, the federal limitations period can be equitably tolled under the Court's equitable jurisdiction. Souter v. Jones, 395 F.3d 577, 599-600 (6th Cir. 2005).

In addition, under 28 U.S.C. § 2244(d)(2), "the time <u>during which a properly filed application for State post-conviction</u> or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection." Id. (emphasis added). "The [statutory] tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." Vroman, 346 F.3d at 602 (6th Cir. 2003) (quoting Rashid v. Khulmann, 991 F.Supp. 254, 259 (S.D.N.Y. 1998)). "[A]n application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, ... the time limits upon its delivery." Id. at 603 (quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000).

In Vroman, the habeas petitioner asserted that his state post-conviction petition was timely under Ohio law and thus, tolled the federal statute of limitations for his federal habeas action. 346 F.3d at 603 (quoting Artuz). The Sixth Circuit explained that for federal habeas action:

7

> The AEDPA limitations period may be tolled for that period of time "during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." Rashid v. Khulmann, 991 F.Supp. 254, 259 (S.D.N.Y.1998).

Id. at 602.

In Vroman, the Sixth Circuit ruled that unless the State post-conviction proceedings effectively tolled the federal habeas limitations period, Plaintiff's federal claim was untimely because, "[t]he timeliness of an Ohio prisoner's post-conviction petition is governed by state statute." Id. at 603. As that Court explained:

> "[F]ederal courts ... defer to a state court's judgment on issues of state law and, more particularly, on issues of state procedural law." Israfil, 276 F.3d at 771; see also Godfrey v. Beightler, 54 Fed.Appx. 431, 2002 WL 31805606, at *2 (6th Cir. Dec.10, 2002) (stating that "federal courts defer to the state court's interpretation of state filing requirements"). In Israfil, the Sixth Circuit held that "[b]ecause state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice." 276 F.3d at 771 (citations omitted). Therefore, the Israfil court concluded that the district court properly deferred to the Ohio state court's finding as to whether the petitioner's post-conviction motion had been submitted according to Ohio's timeliness requirements. Id. at 771-72; see also Raglin, 10 Fed.Appx. 314, 2001 WL 523530, at *1 (holding that "untimely state collateral attacks are not properly filed and do not toll the statute of limitations" and therefore concluding that the petitioner's post-conviction petition did not toll the statute of limitations because it was dismissed as untimely under Ohio law). Here, as in Israfil, the district court properly concluded that Ohio's determination of whether Vroman's post-conviction petition was properly filed governs whether such action tolls the statute of limitations under § 2244(d)(2).

Id. at 603.

The Sixth Circuit emphasized that "[t]his court . . . does not function as an additional state appellate court reviewing state court decision on state law or procedure. Allen v. Morris,

845 F.2d 610, 614 (6th Cir. 1988). Moreover, federal court are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state." Vroman, 346 F.3d at 604 (citation omitted).

Applying Vroman, the Court concludes that the timeliness of the Petitioner's state post-conviction petition is governed by the state courts' determinations. Without a timely state post-conviction petition, there was not any tolling of the federal habeas statute of limitations. Petitioner did not file this action within one year after that his conviction became final and thus, this action is untimely under 28 U.S.C. § 2244(d). Yet, the Respondent does not address whether the equitable tolling doctrine applies here. Equitable tolling is a judicial doctrine that extends to federal habeas action. Souter, 395 F.3d at 599-60. Yet, the tolling doctrine is invoked only in "rare" and "exceptional circumstances." Id.

As applied here, Petitioner does not suffer from a psychosis. Petitioner's doctors have consistently found "no clinical evidence of psychosis." (Docket Entry No. 51-10 at pp. 40, 43, 49, 50 and 83). Petitioner's actual mental condition is depression and by his own statements at his guilty plea hearing, Doxipen, his medication for that condition, does not affect his ability to understand the legal issues at that hearing. "[A]ntipychotic drugs...restore normal thought processes by clearing hallucinations and delusions." Riggins v. Nevada, 504 U.S. 127, 141 (1992).

Petitioner has a GED, reads at a high school level and is writing a book. In 2001, Petitioner received an inmate handbook that expressly informs him of the requirements of the federal habeas statute of limitations. In addition, Petitioner had access at SCCC upon his request to consult a lawyer about any legal matter, including the federal habeas statutes. Prison records

reflect that Petitioner actually asked questions about this handbook. (Docket Entry No. 51-2 at p. 2). The trial court's statements at his guilty plea, that Petitioner waived his right to appeal is a correct statement of Tennessee law, Serrano v. State, 133 S.W.2d 599, 604 (Tenn. 2004) and federal law. Jones v. Barnes, 463 U.S. 745, 751 (1983).

For these reasons, the Court concludes that Petitioner's circumstances are neither extraordinary nor so rare as to justify tolling the federal habeas statute of limitations under the equitable estoppel doctrine.

Thus, this action should be dismissed as untimely under the federal statute of limitations for habeas actions.

An appropriate Order is filed herewith.

**ENTERED** this the _____13th_____ day of November, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge